## FORE vs. FORE.

[INQUISITION OF LUNACY.]

1. *Lunacy, proceedings to determine ; what sufficient notice of, to lunatic.*— In proceedings of lunacy the service of the writ of arrest is the only notice to which the lunatic, idiot, or *non compos mentis* is entitled in order to bring him into court.

2. *Same ; proceedings in, sufficient if statute is followed.*—This proceeding is statutory in this State, and is sufficiently regular if the requirements of the statute are substantially complied with.

3. *Certiorari, effect of ; what judgment must be given on.—Certiorari*, unless the statute otherwise directs, brings up the record of the proceedings in the court below, and the appellate court must give judgment on this record. It must affirm or quash the judgment of the inferior tribunal. It can not reverse the judgment and remand the cause for a new trial.

4. *Quere.*—Does not an appeal lie from the final order of the judge of probate upon a proceeding of lunacy, as in other case of the final disposition of a case?

APPEAL from the Circuit Court of Monroe.
Tried before Hon. P. O. HARPER.

From the bill of exceptions, taken at the hearing before the circuit judge in the court below, which bears date the 17th day of April, 1869, it appears that John F. Fore petioned the honorable judge of the probate court of Monroe county, in this State, to have James Fore declared a person *non compos mentis*. This petition was filed on the 12th day of November, 1868, and it alleges, that petitioner is the nephew of said James Fore; that said James Fore is a male, about seventy-eight years old; that he resides about eight miles north of Midway, in said county of Monroe, and that he is *non compos mentis*, and unable to manage his own business. This petition is duly sworn to by the petitioner. On this petition, the judge appointed the 20th day of November, 1868, to hear said cause.

Writs were then issued for the summoning of a jury, and to take the said James Fore, the alleged *non compos mentis*, and if consistent with his health or safety, have him present at the place of trial, as required by law. This latter writ, for the arrest of the incompetent, was dated November 12th, 1868, and has the following return indorsed thereon by the sheriff, to-wit: "Executed on said James Fore; and I further return that it is not consistent with the health and safety of said Fore to be present at the trial; this, November 16th, 1868." At the time appointed for the trial, to-wit, on the 20th day of November, 1868, the cause was heard, and the jury found that the facts in the petition were true, "and that the said James Fore is a *non compos mentis* and incapable of governing himself or managing his own affairs." Upon this finding, the court ordered, adjudged and decreed, that said petition be recorded, and appointed said J. F. Fore guardian of the person and property of said James Fore, said *non compos mentis*.

On the 7th day of December, 1868, said James Fore, said *non compos mentis*, by his next friend, petitioned the judge of probate of said county of Monroe for his restoration to the custody and management of his estate. The facts of this petition were contested by said guardian, and a jury was summoned to try the facts. On the trial of this petition, the jury found against the petitioner, and that

the allegations set forth in his petition were "untrue." Upon this, the court decreed judgment for costs in favor of John F. Fore against the next friend of the petitioner, and ordered the proceedings to be recorded.

After this last judgment, said James Fore petitioned the honorable judge of the 11th judicial circuit of this State for a writ of *certiorari* "removing said petition so filed by said John F. Fore and cause into the circuit court of said Monroe county, Alabama, that said cause may be tried *de novo.*" The prayer of this petitioner was granted, and a *certiorari* was issued accordingly, and said cause was thus taken into the said circuit court, but on motion of said John F. Fore, it was dismissed out of said circuit court. And this judgment of dismissal is now brought to this court by appeal.

S. J. CUMMING, for appellant.—1. The doctrine, that in a proceeding on inquisition of lunacy, the party sought to be declared a *non compos* must have notice of the proceeding, is too firmly established in principle, and by the decisions of this court, to be now controverted.—*McCurry v. Hooper*, 12 Ala. 823 ; *Eslava v. Lepretre*, 21 Ala. 504 ; *Chase v. Hathaway*, 14 Mass. 222 ; *Wait v. Maxwell*, 5 Pick. 219 ; 2 Barb. Ch. Pr. 230, 231.

Did James Fore have any notice in the case ? There is nothing that can have the least claim to be a notice to the alleged *non compos*, but that set out on page nine of the record. What is that ? It is simply a notice or order to the sheriff, directing him that "if it be consistent with the health and safety of said James Fore, you are hereby required to take his body, so that you may have him in said court, to be present at said trial." It is no notice to James Fore, and does not profess to be. It is simply an order to the sheriff as required by § 3190 of the Revised Code. It may be insisted that the return of the sheriff shows that James Fore had notice of the proceeding. What that return really is, must be determined by the order on which the return was made. That order informed the *sheriff, and the sheriff alone*, of certain facts, and directed him to do a certain thing, namely, "take his body so that you may have

Fore v. Fore.

him in said court to be present at said trial." And the execution of this order was simply by taking the body, and finding him unable to attend court, discharging him. That is the strongest view that can legitimately be taken of the return by the sheriff. But I insist, that the fair and proper construction of the sheriff's return, in the eye of the law, it involving a question of liberty and property, is, that the sheriff, finding that James Fore was physically unable to attend the court, gave him no notice of the proceedings, but returned the order to the probate court, with his endorsement thereon, as appears in the record.

2. So far back that it may be considered common law, the court of chancery, under the crown, alone had jurisdiction of lunatics and persons *non compos;* and in the court of chancery the alleged *non compos* was entitled to notice when a commission of lunacy was to be executed.

3. The case is strongly put by the supreme court of Massachusetts, in the case of *Chase v. Hathaway,* 14 Mass. Rep. 222. That court says, on page 226 : "Indeed, it would seem strange that the whole estate of a citizen might be taken from him, and committed to others, and his personal liberty restrained, upon an *ex parte* proceeding, without any notice of the pendency of a complaint, upon a suggestion of lunacy or other defect of understanding, while the depriving him of the minutest portion of that property, or the slightest detention of his property, would be illegal upon a charge of crime, or of a breach of a civil contract, unless all the formalities of a trial were secured to him *by the forms of process, and the regular execution of it."* When a statute requires service of a notice upon an individual, it means *personal service,* unless some other service is specified or indicated.—*Rathbun v. Acker,* 18 Barb. 393 ; *Oakey v. Aspinwall,* 4 Comst. pp. 520–21.; see, also, *Wait v. Maxwell,* 5 Pick. 217, as to notice.

4. The same line of argument on this point is taken up, and maintained by this court, in the cases of *McCurry v. Hooper,* and *Eslava v. Lepretre,* before cited ; and the Massachusetts cases are referred to and cited with approbation.

5. Neither in the Massachusetts Acts, on the subject of

Inquisitions of Lunacy, nor in our statute as contained in the Revised Code, or under the law in Clay's Digest, is notice to the alleged *non compos* required. But all the cases before cited lay down the law as undeniable, that he must have personal notice, issued and executed on him according to the forms and requirements of the law.

5. The 12th section of the declaration of rights in the constitution of Alabama, declares "that no person shall be debarred from prosecuting or defending before any tribunal in the State, by himself or counsel, any civil action to which he is a party." But if a man can be tried, and his liberty restrained, and his property taken from him, without notice, he is deprived of this constitutional right.

6. That *certiorari* was the proper remedy and proceeding by which to take the case to the circuit court, is shown by the decisions of this court in *Ex parte Keenan*, 21 Ala. 558; *Lamar v. Commissioners' Court*, 21 Ala. 773 ; *The Commissioners, &c. v. Thompson*, 15 Ala. 134 ; *Barnett v. The State*, 15 Ala. 329 ; Rev. Code, § 747.

7. It may be that the filing the petition, alleging jurisdictional facts, may have given the probate court of Monroe jurisdiction of the subject matter. But here the court renders a personal judgment ; and a personal judgment or decree is erroneous and void, unless the court has acquired jurisdiction over the person, as well as over the subject matter.—*Mitchell v. Gray*, 18 Indiana, 123 ; *Gray v. Hawes*, 8 California, 562 ; *Steen v. Steen*, 25 Mississippi, 513, and cases before cited.

J. W. POSEY, *contra.*

PETERS, J., (after stating facts as above.)—No doubt a *certiorari* may be improvidently granted. When this is the case, it should be dismissed.— *Winn v. Freele*, 19 Ala. 171 ; *Enis v. Ross*, 19 Ala. 239.

The jurisdiction of causes for the inquiry into lunacies and idiocies, and into such mental incapacity as renders a party incompetent to manage his own affairs, and requires the assistance of a guardian, has been transferred by our law from the chancellor to the judge of probate.

And this latter officer exercises the same jurisdiction that the chancellor did before this change, but in the manner prescribed by the statute ; and the proceedings before the judge of probate must have the same effect, to the extent they go, that the like proceedings would have had before the chancellor. Judge Story lays down the chancery practice in such cases, which is no doubt correct, as follows : He says, "in regard to the manner of ascertaining whether a person is an idiot or a lunatic, or not, a few words will suffice. Upon a proper petition addressed to the chancellor, not as such, but as the person acting under the special warrant of the crown, a commission issues out of chancery, on which the inquiry is to be made, as to the asserted idiocy or lunacy of the party. The inquisition is always had, and the question tried by a jury, whose unimpeached verdict becomes conclusive upon the facts. The commission is not confined to idiots or lunatics, strictly so-called ; but in modern times it is extended to all persons who, from age, infirmity, or other misfortune, are incapable of managing their own affairs, and therefore are properly deemed of unsound mind, or *non compotes mentis.* 2 Story on Eq. § 1365; Rev. Code, § 3189. In this case the requisitions imposed by the statute seem to have been very precisely pursued. The writ of arrest of the lunatic, or the alleged incompetent, was duly served upon him. This completed the jurisdiction of the judge of probate, and brought the defendant into court; no other notice is required by the statute. If the defendant failed to avail himself of such matters of defence as he might have had to urge in his behalf, he must suffer the effect of his failure to do so. His ignorance of the time and mode of making his defense can not avail in the present condition of his cause. Ignorance of law, in such a case, does not excuse. *Ignorantia juris non excusat.*—Broom's Max. p. 122, marg. Aside from this objection, that the defendant, Fore, was not sufficiently and properly notified of the proceeding in lunacy before the judge of probate, which is so ably urged by the learned counsel for the appellant, the record of the proceedings before the judge of probate is devoid of irregularity. But this objection is not well

taken to this proceeding ; because it clearly appears that the defendant, Fore, had all the notice that the statute contemplates. This must be regarded as sufficient.—Rev. Code, § 3190.

A *certiorari* only brings up the record of the proceedings in the inferior court to the superior court, and the cause must be heard in the superior court on the record alone. There can not be a trial *de novo*, unless the statute has so directed. If there is no error in the record, the judgment of the inferior court must stand ; and such errors as do not grow out of the record, must be reserved by bill of exception, whether they arise out of law or fact.— 2 Bac. Ab. Bouv. p. 162, *et seq.; John v. The State*, 1 Ala. 95. The judgment on *certiorari* is either that the proceedings below be quashed or that they be affirmed.—8 Yerg. 102, 118 ; 5 Mass. 423.

I think that an appeal may well lie in such a case as this. It is a proceeding before the judge of probate, and is disposed of by his order ; it is also a final disposition of the cause before him. The interest often involved is certainly such as would justify an appeal.—Rev. Code, § 2247, 3485 ; Const. Ala. 1867, art. vi, §§ 1, 2 ; 2 Chitty's Gen. Pr. 353, 354.

No doubt a party is entitled to notice of proceedings against him to have him declared a lunatic, or a person *non compos mentis*. But that is not the condition of this case. Here the party had the notice that the statute prescribes. This being so prescribed, it takes the place of all others, unless it is merely a cumulative statute. This is not so. The statute changes the old law, and it deals with the whole subject ; the form of the remedy, as well as the jurisdiction. In such a case the statute contains the whole law, and repeals the old requirements not copied into it. Then the writ of arrest is all the notice the defendant was entitled to, and this he received.—*Eslava et al. v. Lepretre*, 21 Ala. 504 ;. Smith's Com. on Stat. p. 904, § 786.

There was no error, as shown by the record, in the proceedings in this suit in the court below. Its judgment is. therefore affirmed. The appellant's representative will pay the costs of this appeal in this court and the court below.